UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARK CESTARI,<br>      Plaintiff | )<br>)<br>) |
| v. | )   C.A. No. 15-13402-MLW<br>) |
| VIAAIR, LLC ET AL.,<br>      Defendants | )<br>) |

MEMORANDUM AND ORDER

WOLF, D.J.                                    September 15, 2016

Plaintiff Mark Cestari sued defendants ViaAir, LLC, Mauiva AirExpress, LLC, Irit Vizer, and Amos Vizer in the Middlesex County Superior Court of the Commonwealth of Massachusetts. Defendants removed the case to this court. Cestari is a resident of Massachusetts. Defendants are residents of Florida. Cestari alleges that he had an employment contract with defendants under which he would be paid, among other things, a salary of $7,000 per month. He further alleges that he worked under the contract for five months and defendants have not paid him for his services. Cestari asserts claims for: (1) unpaid wages under the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, §148; (2) breach of contract and breach of the implied covenant of good faith and fair dealing; (3) intentional misrepresentation; and (4) violation of Mass. Gen. Laws ch. 93A.

Defendants moved to dismiss this case for lack of personal jurisdiction. Cestari opposed the motion. Magistrate Judge Judith Dein issued a Report and Recommendation recommending that

defendants' motion to dismiss be allowed because Cestari had failed to offer the evidence necessary to make a prima facie showing that defendants had sufficient contacts with Massachusetts to permit the court to exercise personal jurisdiction over them.

No objections to the Report and Recommendation have been filed. However, near the deadline for objections, Cestari filed an affidavit, unaccompanied by a memorandum explaining the implications for the motion to dismiss of the facts asserted in the affidavit or presenting any argument as to why the court should exercise its discretion under 28 U.S.C. §636(b)(1)(C) to consider additional evidence not presented to the Magistrate Judge.

28 U.S.C. §636(b)(1)(C) states that:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. §636(b)(1)(C) (emphasis added). Federal Rule of Civil Procedure 72(b)(3) similarly states that:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

As indicated earlier, no objection has been made to any portion of the Magistrate Judge's report or to any specified

proposed finding.  Therefore, the court is not required to consider any issue de novo.

To defeat the motion to dismiss for lack of personal jurisdiction, Cestari is required to "produce evidence to support [his] jurisdictional allegation because [he has] the burden of showing that the court may exercise in personam jurisdiction over [the defendants]."  Boit v. Gar-Tec Prod., Inc., 967 F.2d 671, 680 (1st Cir. 1992).  The Magistrate Judge permissibly used the prima facie standard to determine whether Cestari had satisfied his burden.  See Report and Recommendation at 18 (citing id.).  The Magistrate Judge correctly stated that Cestari "failed to provide an evidentiary basis for his assertion that the parties entered into an employment contract, much less a contract for work to be performed in [Massachusetts]."  Id.

The Cestari affidavit filed with this court is apparently an effort to cure this deficiency.  The court recognizes that it has the discretion to consider the information in the affidavit.  See 28 U.S.C. §636(b)(1)(C); F.R. Civ. P. 72(b)(3); Jasty v. Wright Medical Tech., Inc., 528 F.3d 28, 31 (1st Cir. 2008).  It is, however, not appropriate to do so.

The requirement that a plaintiff submit evidence to make a prima facie case of personal jurisdiction is well-established and familiar.  There is no argument or evident reason why the

information included in the Cestari affidavit was not presented to the Magistrate Judge.

Generally, "[p]arties must take before the magistrate [judge] not only their best shots but all of their shots." Borden v. Sec'y of Health & Human Services, 836 F.2d 4, 6 (1st Cir. 1987) (internal quotation and citation omitted). The role of the magistrate judge is to "assume some of the burden imposed [on the district courts] by a burgeoning caseload." Patterson Leitch v. Massachusetts Electric, 840 F.2d 985, 991 (1st Cir. 1988). This effort to promote efficiency would be undermined if, absent compelling circumstances, a party were allowed to alter its arguments or evidence after failing to persuade the magistrate judge. Id. As indicated earlier, there is no apparent reason why the information in the Cestari affidavit could not have been presented to the Magistrate Judge. In addition, that information does not appear to this court to be material to the merits of the motion to dismiss. Therefore, the court is exercising its discretion to not consider the information in the Cestari affidavit.

The court has carefully considered the submissions of the parties to the Magistrate Judge and her Report and Recommendation. The Report and Recommendation is thorough and persuasive. It is, therefore, being adopted.

In view of the foregoing, it is hereby ORDERED that:

4

1.   The   attached   Magistrate   Judge's   Report   and Recommendation   (Docket   No.   29)   is   ADOPTED   and   INCORPORATED pursuant to 28 U.S.C. §636.

2.   For the reasons stated in the Report and Recommendation, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Or, In The Alternative, For Failure to State A Claim (Docket No. 12) is ALLOWED.

3.   This   case   is   DISMISSED   for   lack   of   personal jurisdiction.

UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MARK CESTARI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 15-13402-MLW |
| VIAAIR, LLC, MAUIVA AIREXPRESS, LLC, | ) | |
| IRIT VIZER, and AMOS VIZER, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION ON
## DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL
## JURISDICTION OR, ALTERNATIVELY, FAILURE TO STATE A CLAIM

August 30, 2016

DEIN, U.S.M.J.

### I. INTRODUCTION

Plaintiff Mark Cestari ("Cestari"), a resident of Massachusetts, has brought this action

against two out-of-state limited liability companies, ViaAir, LLC ("ViaAir") and Mauiva

AirExpress, LLC ("Mauiva AirExpress"), and the owners and operators of the two companies, Irit

and Amos Vizer. Cestari claims that the defendants failed to compensate him for five months

of work that he performed pursuant to the terms of an employment contract under which the

plaintiff agreed to serve as the Executive Vice President of Mauiva AirExpress and the defen-

dants agreed to pay him a salary of $7,000 per month plus ten percent of the business's net

profits. By his Amended Complaint, Cestari has asserted claims against each of the defendants

for unpaid wages in violation of the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148,

breach of contract and breach of the implied covenant of good faith and fair dealing, inten-

tional misrepresentation and violation of Mass. Gen. Laws ch. 93A.

The matter is before the court on the "Defendants' Motion to Dismiss for Lack of

Personal Jurisdiction, or, in the Alternative, for Failure to State a Claim" (Docket No. 12).  By

their motion, the defendants contend that all of Cestari's claims against them must be

dismissed pursuant to Fed. R. Civ. P. 12(b)(2) because they lack sufficient contacts with

Massachusetts to support this court's exercise of personal jurisdiction over them.  Alternatively,

they contend that Cestari has failed to state a claim against them under any legal theory, and

that his complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons

described below, this court finds that the plaintiff has failed to make the showing necessary to

subject the defendants to personal jurisdiction in Massachusetts.  Therefore, this court

recommends to the District Judge to whom this case is assigned that the defendants' motion to

dismiss be ALLOWED, and that this matter be dismissed for lack of personal jurisdiction.

## II.  **STATEMENT OF FACTS**

### **Standard of Review of Record**

"On a motion to dismiss for want of personal jurisdiction, the plaintiff ultimately bears

the burden of persuading the court that jurisdiction exists." Astro-Med, Inc. v. Nihon Kohden

Am., Inc., 591 F.3d 1, 8 (1st Cir. 2009), and cases cited.  "When a district court rules on a motion

to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this

case, the 'prima facie' standard governs its determination." United States v. Swiss Am. Bank,

Ltd., 274 F.3d 610, 618 (1st Cir. 2001).  Under this standard, the plaintiff must "demonstrate the

existence of every fact required to satisfy both the forum's long-arm statute and the Due

2

Process Clause of the Constitution." Id. (quotations and citation omitted). Thus, in order to meet his burden in this case, Cestari must "proffer evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016). The court will "take the facts from the pleadings and whatever supplemental filings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely contested facts." Id. It will "then add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 24 (1st Cir. 2005) (quoting Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002)) (additional quotations and citation omitted).

Even under the "relatively relaxed prima facie standard," however, the plaintiff "must verify the facts alleged through materials of evidentiary quality." Barrett v. Lombardi, 239 F.3d 23, 27 (1st Cir. 2001). Thus, "plaintiffs may not rely on unsupported allegations in their pleadings to make a *prima facie* showing of personal jurisdiction." Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992). Similarly, "allegations in a lawyer's brief or legal memoran-dum are insufficient . . . to establish jurisdictional facts." Barrett, 239 F.3d at 27. As detailed below, in the instant case the plaintiff is relying only on allegations in an unverified Amended Complaint, while the defendants have submitted affidavits expressly refuting key allegations in the Amended Complaint.[1] The absence of "properly documented evidentiary proffers" compels this court to recommend that the defendants' motion to dismiss for lack of personal jurisdiction

---

[1] The facts are derived from the following materials: (1) the Plaintiff's Amended Complaint ("Am. Compl.") (Docket No. 8); (2) the Affidavit of Amos Vizer ("A. Vizer Aff."), which is attached as Exhibit A to the defendants' Memoran-dum of Law in support of their motion to dismiss (Docket No. 13); and (3) the Affidavit of Irit Vizer ("I. Vizer Aff."), which is attached as Exhibit B to the defendants' Memorandum of Law.

be allowed. Killion v. Commonwealth Yachts, 421 F. Supp. 2d 246, 252 (D. Mass. 2006) (internal punctuation and citation omitted).

### The Defendants

Defendant ViaAir is a Florida limited liability company with a principal place of business in Maitland, Florida. (A. Vizer Aff. ¶ 5). It is an indirect air carrier company, which operates together with direct air carriers to provide air transportation services. (Id. ¶ 4). At all times relevant to the instant action, ViaAir was operating under its former name, Mauiva, LLC ("Mauiva"). (See Am. Compl. ¶¶ 2, 57-58).

ViaAir has no offices outside of Maitland, Florida, and has never maintained an office or registered agent in Massachusetts. (A. Vizer Aff. ¶¶ 5-6; I. Vizer Aff. ¶¶ 5-6). It has never owned any real property in Massachusetts, has never maintained a telephone number or mailing address here, and has never opened a bank account in the Commonwealth. (A. Vizer Aff. ¶ 6; I. Vizer Aff. ¶ 6). In addition, ViaAir has never advertised directly to Massachusetts residents or derived any revenue from Massachusetts, and the defendants expressly deny that the company has ever had any business connection with Massachusetts. (Id.).

Defendant Amos Vizer, a resident of Florida, is the Chairman of ViaAir, and his wife, Irit Vizer, serves as the company's Manager. (Am. Compl. ¶ 5; A. Vizer Aff. ¶ 1; I. Vizer Aff. ¶ 1). Neither Amos nor Irit Vizer has ever resided in Massachusetts or owned any property here, and neither of those defendants has ever maintained a telephone number, bank account or mailing address in the Commonwealth. (A. Vizer Aff. ¶ 16; I. Vizer Aff. ¶ 16). Moreover, the Vizers have never traveled to Massachusetts for the purpose of conducting business in Massachusetts.

4

(Id.). Nor have they derived personal income as a result of any business activities that took place in the forum. (Id.).

Defendant Mauiva AirExpress is an inactive Florida limited liability company, which was formed as a separate and distinct entity from ViaAir for the purpose of exploring certain business opportunities. (A. Vizer Aff. ¶¶ 7-8; I. Vizer Aff. ¶¶ 7-8). At the time it was active, Amos Vizer was serving as the company's Chairman, and Irit Vizer was serving as its Manager. (A. Vizer Aff. ¶ 7; I. Vizer Aff. ¶ 7). As in the case of ViaAir, Mauiva AirExpress has never maintained an office, registered agent, mailing address or telephone number in Massachusetts, and has never owned any real property in the Commonwealth. (Id.). Additionally, it has never opened a bank account here, directed any advertising to Massachusetts residents, or derived any revenue from business activities in Massachusetts. (Id.). There is no dispute that Mauiva AirExpress contemplated and discussed potential partnership opportunities with the plaintiff. (See A. Vizer Aff. ¶ 8; I. Vizer Aff. ¶ 8). However, as described in more detail below, the Vizers expressly deny that the parties ever entered into a contractual agreement.

### Initial Communications Between the Parties

The plaintiff, Cestari, is a travel marketing and airline industry executive who resides in Middlesex County, Massachusetts. (Am. Compl. ¶¶ 1, 12). At some point during the summer of 2013, Cestari learned that the defendants were interested in establishing a scheduled charter flight and business commuter flight operation. (Id. ¶ 13). The plaintiff had experience in the relevant field and was interested in exploring a potential business opportunity with the defendants. (See id. ¶ 13; A. Vizer Aff. ¶ 9). Accordingly, on or about July 24, 2013, Cestari traveled to Florida to meet with Amos Vizer. (Am. Compl. ¶ 14; A. Vizer Aff. ¶ 9). During the

meeting, the parties discussed the possibility of working together to develop Mauiva AirExpress as a new entity to operate a charter and commuter flight business. (See Am. Compl. ¶¶ 14-16, 21; A. Vizer Aff. ¶¶ 9-10).

Allegedly, the initial meeting between Cestari and Amos Vizer proved successful, and the parties continued to engage in communications regarding the potential new business. (Am. Compl. ¶¶ 16-17). For instance, on or about July 25, 2013, Cestari engaged in a lengthy phone call with Mr. Vizer in which they discussed details of the proposed venture. (Id. ¶ 17). Subsequently, on or about July 30, 2013, Cestari returned to Florida, at Amos Vizer's request, in order to meet with and present details of the proposed business to executives from the Vizers' companies. (Id. ¶¶ 18, 20). According to the plaintiff, Amos Vizer introduced Cestari to the executives as "a potential new hire to run the new charter and commuter flight business." (Id. ¶ 19). The plaintiff also claims that Amos Vizer instructed him to solicit feedback from the executives and incorporate their comments into a business plan for Mauiva AirExpress. (Id. ¶ 20).

Cestari alleges that he proceeded to develop and revise details of a business plan with input from the Mauiva management team. (Id. ¶ 22). He also returned to Florida, on or about August 21, 2013, to participate in more meetings with groups of employees from the Vizers' companies. (Id. ¶ 23). Cestari contends that during his visit, Amos Vizer discussed the plaintiff's formal role in the company, and offered him employment with Mauiva AirExpress. (Id. ¶¶ 24-26). The defendants refute Cestari's claim that any such offer occurred or that an employment contract was formed.

6

## The Alleged Employment Agreement

As set forth in his Amended Complaint, Cestari alleges that on August 22, 2013, Amos Vizer offered him a position as the Executive Vice President of Mauiva AirExpress, "which was understood to be an employment position with Mauiva, running the Mauiva AirExpress business from Massachusetts." (Id. ¶ 26). He also alleges that Mr. Vizer offered to pay him a salary of $7,000 per month, plus ten percent of the net profits of the Mauiva AirExpress business. (Id. ¶¶ 27-28). According to the plaintiff, Mr. Vizer further agreed that Mauiva would provide him with medical insurance coverage, and explained that the company's human resource personnel would need to work out arrangements for the insurance due to the fact that the plaintiff was located in Massachusetts rather than in Florida. (Id. ¶ 28). Cestari alleges that he accepted the employment offer immediately, and that Amos Vizer welcomed him aboard. (Id. ¶ 29). He further claims that Mr. Vizer provided him with an employee identification card, a Mauiva business address in Florida, a Mauiva telephone number, a Mauiva email address and Mauiva business cards. (Id. ¶¶ 30-31).

The plaintiff has submitted no evidence to support these allegations. In particular, he has presented no affidavits attesting to the alleged facts, and has filed no exhibits referencing the alleged agreement. The Amended Complaint is not verified. The defendants, on the other hand, have submitted affidavits from Amos and Irit Vizer in which the Vizers expressly deny that any of the defendants entered into an employment agreement with Cestari, or that Amos Vizer ever told Cestari that he was an employee of Mauiva AirExpress or ViaAir. (A. Vizer Aff. ¶¶ 11-12; I. Vizer Aff. ¶ 11). Rather, according to Amos Vizer, he informed Cestari that any potential business relationship between the plaintiff and Mauiva AirExpress "would be that of an

7

independent contractor and not as an employee of that company." (A. Vizer Aff. ¶ 12). In addition, the Vizers have testified that they never contemplated performing any business or providing any services in Massachusetts, that none of the defendants have rendered any services in the Commonwealth or performed any work that was targeted at Massachusetts, and that they have had no reason to believe that any of the defendants would be subjected to any business dealings or court proceedings in this forum. (A. Vizer Aff. ¶¶ 14-15; I. Vizer Aff. ¶¶ 14-15). The plaintiff has made no attempt to offer any verified evidence to refute the defendants' version of events.

### Cestari's Alleged Work on Behalf of the Defendants

Cestari claims that after he returned to Massachusetts from his August 2013 trip to Florida, he continued his efforts to launch the new Mauiva AirExpress business. (Am. Compl. ¶ 32). Thus, as the plaintiff describes in his Amended Complaint, he traveled to New York City and Washington, D.C. to investigate potential business opportunities for Mauiva AirExpress. (Id. ¶¶ 33-34). He also engaged in negotiations with individuals from Niagara Falls, New York; Trenton, New Jersey; New Haven, Connecticut; Boston, Massachusetts; and Bedford, Massachusetts — locations that could serve as preliminary destinations for Mauiva AirExpress flights. (Id. ¶ 35). On September 11, 2013, Cestari returned to the defendants' offices in Florida in order to report on his progress. (Id. ¶ 36). Although Mr. Vizer was not present, Cestari claims that he described his efforts on behalf of the proposed new venture to the remainder of Mauiva's executive employees. (Id.).

Allegedly, Cestari continued to perform business development work in Massachusetts, and to travel to Florida at the defendants' request to discuss his progress with Mauiva's

management team. (Id. ¶¶ 37-38). During a visit to Florida in late September 2013, the defen-
dants allegedly set up an account for the plaintiff so he could obtain reimbursement for his
business expenses. (Id. ¶ 39). According to the plaintiff, however, he had not yet received any
payment for the work that he had performed on behalf of the defendants. (See id. ¶¶ 40-41).
Cestari claims that by October 2013, he had begun to express concern about the lack of
compensation to Mitch Pizik, his primary routine contact person at Mauiva, and that he notified
Amos Vizer about the problem as well. (Id.). Mr. Pizik allegedly told Cestari not to worry, and
explained that the company was busy and typically took a long time to process new hires. (Id.
¶ 40). Again, the plaintiff has failed to produce evidence to support any of these allegations.

Cestari claims that he continued to work and travel to promote the new business
venture, and to visit the defendants' headquarters in Florida, without receiving any compen-
sation. (Id. ¶¶ 42-43). Allegedly, however, Mauiva executives repeatedly assured him that he
would receive payment soon. (Id. ¶ 42). For example, the plaintiff claims that he met with Irit
Vizer to discuss his lack of pay during a trip to Florida in November 2013, and that Mrs. Vizer
assured him that her husband would resolve the issue as soon as he was available. (Id. ¶¶ 43-
44). However, the plaintiff asserts that the pay issue was never resolved, and that he never
received any compensation for the work that he performed.

### Cestari's Alleged Resignation

Cestari claims that the defendants' failure to pay him, and to provide him with express
authority to consummate any business deals, ultimately forced him to resign from his employ-
ment with Mauiva AirExpress. Once again, however, he has failed to present anything more
than bare allegations in support of his contentions. Accordingly, the following description of

9

the circumstances surrounding his resignation are based solely on facts alleged in the Amended Complaint.

According to the plaintiff, on or about December 10, 2013, he was negotiating with executives in Atlantic City, New Jersey as part of an effort to develop air service to that destination. (Id. ¶ 46). The plaintiff contends that during the negotiations, the executives informed him that they would not agree to finalize a deal until Cestari provided a formal document from Mauiva confirming the plaintiff's status as an employee or officer with authority to bind the company. (Id.). He further contends that he immediately brought this issue to the attention of Mr. Pizik, who alerted Amos Vizer about the plaintiff's concerns. (Id. ¶ 47). Subsequently, on or about December 18, 2013, the plaintiff allegedly participated in a telephone call with Mr. Pizik, Mr. Vizer and Mauiva's attorney in which Cestari emphasized his need for both compensation and documentation verifying his authority to enter into deals on behalf of Mauiva AirExpress. (Id. ¶ 48). Cestari claims that while Mr. Vizer assured everyone that the problem would be resolved, no steps were ever taken to address his concerns. (Id. ¶ 49).

In early January 2014, Cestari allegedly participated in another telephone call with Mr. Vizer and Mr. Pizik in which the plaintiff complained that he had been working for months without pay, and that a number of potential deals were in jeopardy of falling through because he could not verify that he was in a position to bind Mauiva AirExpress. (Id. ¶ 50). Cestari claims that during this conversation, Mr. Vizer discussed ways in which the business could move forward with the plaintiff working as a "partner" on the venture earning only a percentage of future profits rather than a salary. (Id. ¶ 51). Cestari claims that he protested, and explained

that he could not continue to work without regular compensation. (Id. ¶ 52). Allegedly, Mr.

Vizer again promised to rectify the situation, but the matter was never resolved. (Id. ¶ 53).

On January 15, 2014, Cestari traveled to Florida where he met with Mr. Pizik to discuss

the situation.[2] (Id. ¶ 54). According to the plaintiff, Mr. Pizik agreed that nothing seemed likely

to change, and Cestari expressed his intention to notify his contacts that he was unable to

complete the deals they had negotiated, and to resign from Mauiva, unless he was paid and

given authority to finalize deals by January 20, 2014. (Id.). On January 20, 2014, following the

defendants' alleged failure to comply with these conditions, Cestari resigned from his

employment. (Id. ¶¶ 55, 57). In his Amended Complaint in this action, Cestari claims that the

defendants "intentionally and knowingly misrepresented the terms of his employment,

intentionally and knowingly misrepresented that his compensation and employment paperwork

were being processed, and repeatedly, intentionally and knowingly misrepresented their

intention to pay him the compensation agreed to, or any compensation, in order to induce

[him] to continue working for them without compensation." (Id. ¶ 56).

Additional factual details relevant to this court's analysis are provided below where

appropriate.

### III. ANALYSIS

As described above, Cestari has asserted claims against the defendants for unpaid

wages in violation of the Massachusetts Wage Act (Count I), breach of contract and breach of

the implied covenant of good faith and fair dealing (Count II), intentional misrepresentation

---

[2] The plaintiff has alleged that his January 15 trip to Florida occurred in 2013, but this is clearly a typographical error. (See Am. Compl. ¶ 54).

(Count III) and violation of Mass. Gen. Laws ch. 93A (Count IV). The defendants argue that all of

these claims must be dismissed because they do not have sufficient contacts with Massachu-

setts to render them amenable to suit in this forum. Alternatively, they argue that even if there

is personal jurisdiction over them in Massachusetts, dismissal is still warranted for failure to

state a claim. For the reasons that follow, this court finds that Cestari has failed to make a

*prima facie* showing of personal jurisdiction over any of the defendants. Accordingly, this court

recommends that the motion to dismiss be allowed pursuant to Fed. R. Civ. P. 12(b)(2).

### A.   Personal Jurisdiction – Generally

In order to exercise personal jurisdiction over a defendant, the court must "find

sufficient contacts between the defendant and the forum to satisfy both that state's long-arm

statute and the Fourteenth Amendment's Due Process Clause." Sawtelle v. Farrell, 70 F.3d

1381, 1387 (1st Cir. 1995). The First Circuit has "sometimes treated the limits of Massachu-

setts's long-arm statute as coextensive with those of the Due Process Clause." Copia

Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 4 (1st Cir. 2016). In such cases, the court has

been able to "sidestep the statutory inquiry and proceed directly to the constitutional

analysis[.]" Daynard, 290 F.3d at 52. Recently, however, the First Circuit has "suggested that

Massachusetts's long-arm statute might impose more restrictive limits on the exercise of

personal jurisdiction than does the Constitution." Copia Commc'ns, 812 F. 3d at 4. This court

finds that in the instant case it is not necessary to resolve "this possible tension" in the case law

or to consider whether the record satisfies the Massachusetts long-arm statute because the

record does not support a finding of personal jurisdiction over the defendants under the

potentially less restrictive constitutional standard. See id.

Under the Due Process Clause, a court may exercise personal jurisdiction "over an out-of-state defendant only if that defendant has 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)) (alteration in original; additional quotations and citation omitted). Accordingly, "[t]he accepted mode of analysis for questions involving personal jurisdiction concentrates on the quality and quantity of the potential defendant's contacts with the forum." Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999). "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cty., 480 U.S. 102, 109, 107 S. Ct. 1026, 1030, 94 L. Ed. 2d 92 (1987) (punctuation and emphasis in original, quotations and citations omitted).

"Personal jurisdiction may be either general or specific." Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010). Specific jurisdiction exists "where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." Id. (quoting Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994)). "General jurisdiction broadly subjects the defendant to suit in the forum state's courts 'in respect to all matters, even those that are unrelated to the defendant's contacts with the forum.'" Id. (quoting Phillips Exeter Acad., 196 F.3d at 288). Thus, a court may assert general jurisdiction over an out-of-state defendant only where the defendant's activities within the forum state are "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924, 131 S. Ct.

13

2846, 2853, 180 L. Ed. 2d 796 (2011) (quoting Int'l Shoe, 326 U.S. at 318, 66 S. Ct. 154). In this case, Cestari has failed to make the evidentiary showing necessary to establish that the defendants' contacts with Massachusetts are sufficient to satisfy either standard.

**B.     General Personal Jurisdiction**

The Supreme Court has "made clear that only a limited set of affiliations with a forum will render a defendant amenable to [general] jurisdiction there." Daimler AG v. Bauman, 134 S. Ct. 746, 760, 187 L. Ed. 2d 624 (2014). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" Goodyear Dunlop Tires Operations, 564 U.S. at 924, 131 S. Ct. at 2853. "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." Daimler, 134 S. Ct. at 760 (quotations, punctuation and citations omitted). In addition, the Supreme Court has left open "the possibility that in an exceptional case, a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." Id. at 761 n.19 (internal citation omitted). In this case, even accepting all of the plaintiff's unverified and unsupported allegations as true, there is no basis for a finding of general jurisdiction.

There is no dispute that both of the Vizers are residents of Florida, and that they have never resided in Massachusetts or have owned any property here. (Am. Compl. ¶¶ 4-5; A. Vizer Aff. ¶ 16; I. Vizer Aff. ¶ 16). Moreover, there is no evidence showing that the individual defendants have conducted activities – much less substantial activities – in the forum state. With respect to the corporate defendants, it is undisputed that neither ViaAir nor Mauiva AirExpress was formed under the laws of Massachusetts or has ever maintained a principal

14

place of business in the Commonwealth. (Am. Compl. ¶¶ 2-3; A. Vizer Aff. ¶¶ 5-7; I. Vizer Aff. ¶¶ 5-7). Additionally, there is nothing in the record to suggest that either of those companies conducts, or has ever conducted, any continuous or substantial operations in Massachusetts. See Goodyear Dunlop Tires Operations, 564 U.S. at 919, 131 S. Ct. at 2851 (holding that general jurisdiction over out-of-state corporation is present only when the corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State" (quoting Int'l Shoe, 326 U.S. at 317, 66 S. Ct. 154)). Therefore, the record does not justify this court's assertion of general jurisdiction over any of the defendants.

This court's conclusion that general jurisdiction is lacking is not undermined by Cestari's allegation that Amos Vizer hired him as an Executive Vice President of Mauiva AirExpress, with responsibility for running the Mauiva AirExpress business from his home state of Massachusetts. (See Am. Compl. ¶¶ 25-26, 29). Even accepting the plaintiff's allegations as true,[3] they would not support a finding of general jurisdiction. As described in the Amended Complaint, Cestari remained employed by Mauiva or Mauiva AirExpress for only five months, and during that time he traveled and explored work opportunities at various locations up and down the east coast. (See Am. Compl. ¶¶ 25-26, 33-36, 57). Therefore, he has not shown that the defendant companies have "affiliations 'so continuous and systematic as to render [them] essentially at home'" in Massachusetts, "*i.e.*, comparable to a domestic enterprise" here.

---

[3] This court notes, however, that the plaintiff has not submitted any evidentiary support for these allegations, which are directly disputed by the defendants' affidavits. (See A. Vizer Aff. ¶¶ 11-14; I. Vizer Aff. ¶¶ 11-14). Accordingly, this court is not required to accept those allegations as true. See Boit, 967 F.2d at 680 (rejecting plaintiffs' assertion that court must accept the unsupported allegations in their complaint as true).

Daimler, 134 S. Ct. at 758 n.11 (quoting Goodyear Dunlop Tires Operations, 564 U.S. at 919, 131

S. Ct. at 2851) (internal quotations omitted).

### C.   Specific Personal Jurisdiction

"Where the defendant is not subject to general jurisdiction, due process may still permit

a district court to exercise specific jurisdiction." Venmill Indus., Inc. v. ELM, Inc., 100 F. Supp. 3d

59, 67 (D. Mass. 2015). For purposes of the specific jurisdiction analysis, the First Circuit has

"broken the minimum contacts analysis into three categories – relatedness, purposeful

availment, and reasonableness[.]" Adelson v. Hananel, 510 F.3d 43, 49 (1st Cir. 2007). Thus, as

the Court has explained:

> First, the claim underlying the litigation must directly arise out of, or
> relate to, the defendant's forum-state activities. Second, the defendant's
> in-state contacts must represent a purposeful availment of the privilege
> of conducting activities in the forum state, thereby invoking the benefits
> and protections of that state's laws and making the defendant's
> involuntary presence before the state's courts foreseeable. Third, the
> exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

Id. (quoting Daynard, 290 F. 3d at 60) (additional citation omitted). "An affirmative finding on

each of the three elements of the test is required to support a finding of specific jurisdiction."

Phillips Exeter Acad., 196 F.3d at 288. For the reasons that follow, this court finds that while

the conclusory, unverified allegations of the plaintiff might, if true, create a closer question of

specific jurisdiction, they are insufficient, especially in light of the defendants' express, verified

allegations to the contrary, to satisfy the relevant standard.

### Relatedness

The relatedness prong of the jurisdictional analysis "requires the plaintiff to show 'a

demonstrable nexus between its claims and the defendant's forum-based activities, such that

16

the litigation itself is founded directly on those activities.'" C.W. Downer & Co. v. Bioriginal

Food & Sci. Corp., 771 F.3d 59, 66 (1st Cir. 2014) (quoting Adelson v. Hananel, 652 F.3d 75, 81

(1st Cir. 2011)) (punctuation omitted). Thus, "[t]he evidence produced to support specific

jurisdiction must show that the cause of action either arises directly out of, or is related to, the

defendant's forum-based contacts." Phillips v. Prairie Eye Ctr., 530 F.3d 22, 27 (1st Cir. 2008)

(quoting Harlow v. Children's Hosp., 432 F.3d 50, 60-61 (1st Cir. 2005)). In the instant case, all

of the plaintiff's causes of action arise out of his claim for unpaid compensation that the

defendants allegedly owed to him under the terms of an employment agreement. Therefore, in

evaluating relatedness, it is appropriate to "pay particularly close attention to 'the parties' prior

negotiations and contemplated future consequences, along with the terms of the contract and

the parties' actual course of dealing.'" Cossart v. United Excel Corp., 804 F.3d 13, 20 (1st Cir.

2015) (quoting C.W. Downer & Co., 771 F.3d at 66). The court must "conduct this analysis with

reference to the contacts the defendant[s] create[d] with the forum state, though those

contacts may be 'intertwined' with the activities of the plaintiff." C.W. Downer & Co., 771 F.3d

at 66 (quoting Walden v. Fiore, --- U.S. ---, 134 S. Ct. 1115, 1122-23, 188 L. Ed. 2d 12 (2014)).

Cestari alleges that he entered into a contract with the defendants in Florida. Neverthe-

less, to establish that the defendants had an ongoing connection to Massachusetts, he argues

that the defendants entered into an employment contract with him knowing he resided in

Massachusetts and was conducting the work called for under the contract from Massachusetts.

(Pl. Opp. Mem. (Docket No. 21) at 5). Such facts ordinarily would be sufficient to satisfy the

relatedness requirement. See C.W. Downer & Co., 771 F.3d at 66 (holding that plaintiff satisfied

relatedness requirement where evidence showed that defendant had "an ongoing connection

with Massachusetts in the performance under the contract[,]" and that plaintiff's claims arose "from the alleged breach of that contract"). However, in this case, Cestari has failed to provide an evidentiary basis for his assertion that the parties entered into an employment contract, much less a contract that called for work to be performed in this forum. Similarly, he has provided no evidentiary support for his assertion that he completed work on behalf of the defendants in Massachusetts, or for his claim that he alerted the defendants to the progress he was making while present in the Commonwealth. The defendants, for their part, have proffered testimony refuting the existence of a contract or any type of employment relationship. Therefore, Cestari has failed to meet the applicable standard of proof.

While it is true that the plaintiff "need only make a *prima facie* showing of personal jurisdiction" at this stage in the litigation, "[e]ven a *prima facie* showing . . . must be based on specific facts set forth in the record." Boit, 967 F.2d at 680. The plaintiff "must produce evidence to support [his] jurisdictional allegation because [he has] the burden of showing that the court may exercise *in personam* jurisdiction over [the defendants]." Id. Moreover, the plaintiff's burden does not depend upon whether the defendants submit their own evidence disputing the plaintiff's allegations. "To hold that the [plaintiff] ha[s] made a *prima facie* showing of personal jurisdiction because [the defendant] has not presented evidence to refute the [plaintiff's] unsupported allegations would place the burden on defendants to prove that the court does not have personal jurisdiction. Such a ruling would eviscerate the requirement that plaintiffs provide affirmative proof of their jurisdictional allegations." Id. at 681. Consequently, Cestari's failure to provide affirmative proof of facts linking his claims to the defendants' in-forum contacts, particularly in light of the defendants' evidence to the contrary,

precludes a finding of relatedness in this matter and defeats any claim of personal jurisdiction over the defendants in this forum.

### Purposeful Availment

Even if Cestari had proffered sufficient evidence to satisfy the relatedness prong of the test for personal jurisdiction, he has failed to satisfy the purposeful availment prong of the jurisdictional analysis. For purposes of this element, "[t]he baseline rule is that a defendant is subject to jurisdiction only when it 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Carreras v. PMG Collins, LLC, 660 F.3d 549, 555 (1st Cir. 2011) (quoting J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 880, 131 S. Ct. 2780, 2787, 180 L. Ed. 2d 765 (2011)). Accordingly, purposeful availment occurs "when a defendant deliberately targets its behavior toward the society or economy of a particular forum [such that] the forum should have the power to subject the defendant to judgment regarding that behavior." Id. This "requirement guarantees that a defendant will not be subjected to the exercise of jurisdiction based solely on 'random, isolated or fortuitous contacts with the forum state.'" Baskin-Robbins, 825 F.3d at 36 (quoting Adelson, 510 F.3d at 50) (additional quotations and citation omitted). It further "ensures that a defendant will not be swept within a state's jurisdictional reach due solely to the 'unilateral activity of another party or a third person.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)) (additional citation omitted).

"The two key focal points of [the purposeful availment analysis] are voluntariness and foreseeability." Adelson, 510 F.3d at 50. The defendant's contacts with the forum "must be voluntary and not based on the unilateral actions of another party." Id. Additionally, "the

19

defendant's contacts must be such that he could 'reasonably anticipate being haled into court there.'" Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)). The plaintiff has not provided evidence to satisfy either of these requirements.

There is no dispute in the instant case that Cestari initiated the communications between the parties by traveling to Florida and meeting with Amos Vizer to explore potential business opportunities. (Am. Compl. ¶¶ 13-14; A. Vizer Aff. ¶ 9). Accordingly, there is no contention that any of the defendants solicited the plaintiff in Massachusetts or otherwise took steps to facilitate contact with the forum. This factor weighs against a finding of purposeful availment.

On the other hand, Cestari alleges that the defendants were aware of and condoned his working in Massachusetts. (See Am. Compl. ¶¶ 26, 28, 37-38). These factors weigh in favor of a finding of purposeful availment. See C.W. Downer & Co., 771 F.3d at 66-67 (finding that out-of-state company had purposefully availed itself of the privilege of doing business in Massachusetts by soliciting the plaintiff's in-forum services, forming a contract that "envisioned continuing and wide-reaching contacts" in Massachusetts, and causing the plaintiff to undertake extensive activities on its behalf in Massachusetts (quotations and citations omitted)). However, as described above, Cestari has failed to proffer evidence to establish the existence of a contract between the parties under which Cestari would perform work from his home state of Massachusetts, or to support his claim that he performed extensive work on the defendants' behalf while present in the forum. Therefore, this court is constrained to conclude that Cestari has not met his burden of showing that the defendants "purposefully established minimum

contacts with [Massachusetts] such that [they] should have reasonably anticipated begin haled into a court [here]." Boit, 967 F.2d at 681. His claims should be dismissed for this reason as well.

In light of the plaintiff's failure to satisfy either the relatedness prong or the purposeful availment prong of the test for specific jurisdiction, there is no need to consider whether it would be reasonable to exercise personal jurisdiction over the defendants. Nor is it necessary to address the defendants' alternative argument for dismissal based on Cestari's failure to state a claim. See Copia Commc'ns, LLC, 812 F.3d at 6 n.5 (declining to consider whether Massachusetts court's exercise of personal jurisdiction over defendant would be reasonable, or whether matter should be dismissed on alternative grounds, where plaintiff failed to show purposeful availment). Accordingly, this court recommends that the defendants' motion to dismiss be allowed due to lack of personal jurisdiction.

## IV. CONCLUSION

For all the reasons detailed herein, this court finds that the plaintiff has failed to make a *prima facie* showing that the defendants have sufficient contacts with Massachusetts to support this court's assertion of general or specific personal jurisdiction over them. Therefore, this court recommends to the District Judge to whom this case is assigned that the "Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, or, in the Alternative, for Failure to State a Claim" (Docket No. 12) be ALLOWED.[4]

---

[4] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).